[ PHILADELPHIA, JANUARY 20TH, 1840. ]

## BELL and Others *against* MOSS and Another.

P. & Co., merchants in Philadelphia, ordered certain goods of the plaintiffs, merchants in Leghorn, and opened a credit in their favour with L. & Co. of London, who in a letter to P. & Co. recognized the credit.   The plaintiffs in pursuance of this, drew several bills at different times on L. & Co., which were duly paid.   On the 10th of March, 1837, the plaintiffs drew their bill on L. & Co. for £1120 at three months date, which was remitted to their agent in London.   On the thirteenth of the same month, they shipped certain goods to New York consigned-to P. & Co.   On the 23rd of March, L. & Co. wrote to the plaintiffs, to suspend all further valuation on them on account of P. & Co.; and on the 25th of March the bill drawn by the plaintiffs on L. & Co. was protested for non-acceptance.   P. & Co. stopped payment on the 22d of March, and made an assignment to the defendants of certain real and personal property in New York, including all merchandize to arrive in New York belonging to them, in trust to pay in the first place a particular creditor in full, and afterwards to pay other creditors. On the 2nd of May, the general agent of the plaintiffs in New York, communicated by letter to P. & Co. the fact of the non-acceptance of the bills by L. & Co. and inquired for whose account the goods were imported, and how it was intended to reimburse the plaintiffs.   P. & Co. in reply stated the fact of the assignment of the goods to the defendants ; to whom the plaintiffs' agent wrote on the 5th of May, notifying them of the non-acceptance of the bills, and proposed that the goods should be placed in deposit with him until it should be seen whether L. & Co. would pay the bills, and also notified them that the goods had not been paid for, and that they would be required to keep a separate account of them.   The goods arrived at New York on the 9th of May, and were entered by the defendants at the custom-house.   On the 21st of May, an agreement was entered into between the plaintiffs' agent and the defendants, by which it was agreed, that the goods should remain in the possession of the defendants, subject to the legal claims of both parties ; the rights of neither party to be affected.   It did not appear that any demand had been made of the carrier :   *Held,* 1st. That the plaintiffs had a right to stop the goods *in transitu,* notwithstanding the transactions with L. & Co., and notwithstanding the assignment to the defendants.   2d. That a special authority or power for that purpose to the plaintiffs' agent was not necessary. 3d. That there was a sufficient exercise of the right in this case, and that a demand of, or notice to the carrier was not necessary.

THIS was an action of trover brought in this Court, in which James C. C. Bell, William De Yongh and Robert Grant, lately trading under the firm of Bell, De Yongh & Co., were plaintiffs, and Joseph M. Moss and David Samuel were defendants.

The action was instituted to try an alleged right, and the exercise of the right of stoppage in transitu, of certain silks, alleged to have been sold by the plaintiffs, who resided at Leghorn, to the late firm of R. & J. Phillips, who resided at Philadelphia; and which goods had passed into the possession of the defendants, who were

(Bell *v.* Moss.)

the assignees under a special assignment of the effects of the said R. & J. Phillips, in New York, &c.; which assignment is hereinafter given.

On the trial before Sergeant, J., at a Court of Nisi Prius held in Philadelphia on the 14th of November, 1839, the plaintiffs gave in evidence an agreement of the parties " that the action be entered amicably without writ: that a declaration be filed in trover for four cases manufactured silks marked vs Nos. 9, 10, 11 and 12, per ship William & Francis : and that the defendants shall admit that they are in possession of the same, and have converted them to their own use; the intention of the parties being to try, in this action, the right of the plaintiffs to the said goods ;" and the following papers.

Invoice, dated 13th of March, a. d. 1837, of four cases silks, marked vs Nos. 9 a 12, shipped on board the ship William and Francis at Leghorn, bound for New York, by the plaintiffs, to the order of Messrs. R. & J. Phillips, of Philadelphia. (Produced by the defendants upon call of the plaintiffs.)

Bill of lading, dated 13th of March, a. d. 1837, for the said four cases of silks, signed by Charles Lander, master of the said ship, to be delivered at New York, to the order of R. & J. Phillips. This bill of lading was assigned by R. & J. Phillips to the defendants as assignees aforesaid. (Produced by the defendants upon call of the plaintiffs.)

Letter.—Geo. F. Darby to R. & J. Phillips, dated New York, 2d May, a. d. 1837. Extract as follows :—

" Enclosed I send you a letter from Messrs. Bell & Grant, London, containing the unpleasant intelligence that the drafts of Messrs. Bell, De Yongh & Co., for your account on Messrs. Lizardi & Co. had been dishonoured. I have at the same time a letter from Messrs. Bell, De Yongh & Co., informing me, that they were shipping four cases manufactured silks per William and Francis, and they had valued the cost of the same on the above named London house. I have therefore requested the favour of you to inform me for whose account these silks are imported by you, and how it is intended to reimburse my Leghorn friends, since their drafts on London were not honoured. I feel confident that you are as desirous as I can be to protect the interest of my Leghorn friends. I beg you will favour me with an answer with your views, as to the best course to be pursued for that purpose. Please to acquaint me with the exact situation of all your dependencies with them, and to state also if the goods to your address per Eurotas, are included in some previous settlement of account between you and them. I shall feel greatly indebted to you by your early attention to the above, being always with great regard and interest, &c."

(Bell *v.* Moss.)

Letter.—R. & J. Phillips, to Geo. F. Darby, dated Philadelphia, 3d May, A. D. 1837.  Extract as follows:

" Your letter of yesterday with enclosures to us received, putting down three cases of silks per Louvre and one per Eurotas in the account current at our debit, we owed Messrs. Bell, De Yongh & Co., a balance of p5824 18. 2., by their account the cost of the four per William and Francis is p11,083 10. 0. the unaccepted drawings against these three invoices is equal to p11,247 or £1120 and £1037.   The cost of silks per Eurotas, Louvre, and William and Francis is p21,215 41-100ths.   Had these bills been honoured on the invoices per Louvre and Eurotas, the amount of p5423 would have been so much over and against the invoice per William and Francis, and making our indebtedness actually p5661 7. 1. on the whole to Messrs. Bell, De Yongh & Co.   We consider that these bills must be paid, when due, if Messrs. Bell, De Yongh & Co. insist on it, as Messrs. Lizardi & Co. opened and confirmed positively a credit in favour of them for £10,000—£7843 of which they had only employed, and had never received from London any withdrawal of that credit—therefore they, Lizardi & Co. are bound to pay them, if Messrs. Bell, De Yongh & Co. insist on it ; it amounts to an acceptance already.   All the goods coming to our consignment, arriving in New York, are assigned to Messrs. J. M. Moss and Mr. D. Samuel, for the benefit of our creditors, and are therefore put of our control."

Letter.—George F. Darby to J. M. Moss and D. Samuel, assignees as aforesaid, dated New York, 5th May, A. D. 1837.   Extract as follows:

" I consider it my duty, as the agent of Messrs. Bell, De Yongh & Co. of Leghorn, to notify you that I have received advice (from Messrs. Bell & Grant of London,) that two bills of exchange, drawn by Bell, De Yongh & Co., upon Messrs. Lizardi & Co. of London, in favour of Messrs. Bell & Grant, one dated the 10th of March, 1837, for £1120, the other dated the 14th of March, 1837, for £1037, have not been accepted by the said Lizardi & Co., but are now under protest; and that as these bills were drawn upon purchases of silks made by Messrs. Bell, De Yongh & Co. for the account of Messrs. R. & J. Phillips, and which have been shipped to them by the Eurotas, Louvre and William and Francis, and were to have been paid for by the acceptances of Lizardi & Co.; that Messrs. R. & J. Phillips have not yet acquired, as I am advised, a legal title to said silks, and consequently could have no right to assign them for the benefit of their creditors.   I therefore propose, that the portion of silks already arrived, and those hereafter to arrive, should be placed in deposit with me as the agent of the above mentioned houses of Bell, De Yongh & Co. and Bell & Grant, until it is seen whether Messrs. Lizardi & Co. pay the above bills at

(Bell *v.* Moss.)

maturity, Messrs. R. & J. Phillips having stated, in their letter to me of the 3d inst., that they consider Messrs. Lizardi & Co. bound to pay these bills in consequence (as they state) of having opened and confirmed a credit in favour of Messrs. Bell, De Yongh & Co. for £10,000, to meet purchases of goods for account of the Messrs. Phillips, at Leghorn, or should you decline the above proposal, which appears to me as reasonable and good, then I further notify you on behalf of Messrs. Bell, De Yongh & Co., that the silks above referred to, and of which a memorandum is at foot, have not been paid for by Messrs. R. & J. Phillips, and that Messrs. Bell, De Yough & Co. require you to keep a separate account of the sales or other disposition thereof. I will claim from you personally the proceeds thereof, as being their property.—I flatter myself that you will not see, in this notice, anything unfriendly, either to yourself or the Messrs. Phillips, for I have no such intention, but the discharge of a duty to my Leghorn friends."

Letter.—J. M. Moss and D. Samuel, to George F. Darby, dated Philadelphia, 8th May, 1837. Extract as follows:

" Your favour of the 5th May, was duly received, but being absent in New York, was not opened until yesterday. With every desire upon our part to avoid litigation, (which is seconded by the Messrs. Phillips,) and at once to give up the goods, but we are so well satisfied that the Messrs. Lizardi are bound for their confirmed credit to Messrs. Bell, De Yongh & Co., that without the advice of our counsellor, F. Griffin, Esq. of New York, we do not feel ourselves at liberty to do so. By this day's mail we forward to the latter gentleman a statement of the whole transaction, and shall await his decision before we act."

Agreement between the parties, dated 21st of May, A. D. 1837, in the following words:

" Memo. of agreement between Bell, De Yongh & Co. of Leghorn, acting in their behalf, say George F. Darby, their agent at New York, and Joseph M. Moss and David Samuel, assignees of Messrs. R. & J. Phillips, of Philadelphia, the *twenty-first* day of May, one thousand eight hundred and thirty-seven. Whereas, the above named Bell, De Yongh & Co. of Leghorn, have shipped to the said R. & J. Phillips of Philadelphia, two several quantities of silks, and by the vessels mentioned below, and have for their payment drawn upon Messrs. Lizardi & Co., of London, the following bills of exchange, to wit, £1120 sterling, say eleven hundred and twenty pounds sterling, March, 10th. £1037 sterling, say ten hundred and thirty seven pounds sterling, March, 14th, drawn by Bell, De Yongh & Co., of Leghorn, in favour of Messrs. Bell & Grant, London, which bills of exchange have been protested for non-acceptance, though it is hoped they will be paid at maturity. It is therefore agreed between the above named ᵇparties, that the silks

(Bell v. Moss.)

above referred to and specified below, shall be held by and remain in possession of the said Joseph L. Moss and David Samuel, subject to the legal claims and right of the said Bell, De Yongh & Co. and the said assignees; and the said assignees engage and promise not to sell, dispose of or part with the said silks, until any questions arising, or to arise, as to the rights of the parties to said silks, shall be decided by a competent tribunal. In case the said bills should be paid, then the said silks are discharged from any claim or lien therein on behalf of the said Bell, De Yongh & Co., and in case they or any of them are not paid, the rights of neither party are to be affected by this agreement or any thing herein contained."

Cases of silks referred to in the above agreement, vs. "9, 10, 11, 12, four cases, amounting per invoice to p11,082 10."

A bill of exchange, dated Leghorn, 10th March, A. D. 1837, at three months date, for £1120, drawn by the plaintiffs on F. D. Lizardi & Co. of London, in favour of themselves, and endorsed to Messrs. Bell & Grant of London.

Protest for non-payment on the 13th of June, 1837.

A bill of exchange, dated Leghorn, 14th of March, A. D. 1837, at three months date, for £1037, drawn by the plaintiffs on F. De Lizardi & Co. of London, in favour of themselves, and endorsed to Messrs. Bell & Grant of London.

Protest for non-payment on the 17th of June, A. D. 1837.

The following facts were agreed to:

The ship William and Francis, with the said silks on board, arrived at New York on the 9th of May, A. D. 1837.

Messrs. Bell & Grant of London, were a branch of the plaintiffs' house, and protested the bills aforesaid as agents of Bell, De Yongh & Co. for collecting the same.

George F. Darby was the plaintiffs' agent at New York.

Messrs. R. & J. Phillips stopped payment before the said silks arrived at New York, viz. on or about the 22d of March, 1837.

The defendants on the trial gave in evidence the following:

Letter.—F. De Lizardi & Co. to R. & J. Phillips, dated London, 29th June, 1836. Extract as follows:

"Bell, De Yongh & Co. of Leghorn. We observe the credit granted by you in their favour for £10,000, ten thousand pounds, or such portion thereof as they may employ, which shall be duly attended to. We observe that in neither of the credits now referred to, have we any invoices or bills of lading to require of the parties drawing."

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, July 16th, 1836. Extract as follows:

Vol. v.—25

(Bell *v.* Moss.)

" The credit for £10,000, you have been pleased to open in our favour with Messrs. F. De Lizardi & Co. of London, shall be made use of as circumstances require. Our exchanges have risen considerably of late, owing to the great scarcity of money; and bills on London are now hardly negotiable at 50¼."

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, November 19th, 1836. Extract as follows:—

" We have taken the liberty of drawing upon Messrs. Lizardi & Co., of London, for £stg. 2750—as per note at foot which figures to the credit of your account in silver p14,184 13. 4."

| 1836. | | | | Note. | | Silver. | |
|---|---|---|---|---|---|---|---|
| Sept. 29, £stg. 550 at usance at exchange of 50d. & | | | | | | | |
| | | | Agis 7 0-0 | - | - | p2824 16 00 | |
| Nov. 4. | " | 1000 | do. | do. | 49¾ " | 5161 16 01 | |
| " 7, | " | 900 | do. | do. | 49¾ " | 4645 12 06 | |
| " 11, | " | 300 | do. | do. | 49⅝ " | 1552 08 09 | |
| | | | | | | p1,4184 13 04 | |

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated, Leghorn, Dec. 2, 1836. Extract as follows:—

" In looking into the state of your account we find that after drawing upon Messrs. De Lizardi & Co., for the rags and two cases of silks from Sartori to go by the Groton, we shall have about £stg. 2800, remaining at our disposal from your credit of 31st of May last, for £stg. 10,000. According to the contracts made by Mr. Sartori for silks deliverable to all March next, the amount will be about £stg. 4000, and consequently we should be expecting from you a fresh credit. In this reckoning is included all the refined borax received up to this period; and if we cancel your contract, as we hope to do, there will be little more to pay on that account."

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, December 21st, 1836. Extract as follows:

" At foot is a note of our draft for your account upon Messrs. Lizardi & Co., in £stg. 2700 to your credit in p14,000 15. 6., silver, which nearly balances our disbursements for you, after allowing full p12 for the net proceeds of the coffee and cocoa per Volant, which we much fear exceeds what those goods will really fetch."

| | Note of our drafts. | | | | |
|---|---|---|---|---|---|
| 1836. Nov. 28th, | £1200 | at cash of 49⅝ | | p6209 15 05 | |
| Dec. 2, | 800 | do. | 49½ | 4150 06 00 | |
| " 7, | 700 | do. | 49¾ | 3604 14 01 | |
| | £2700 | at three months date, p14,000 15 06 | | | |
| | | including p7 0-0 Agio. | | | |

(Bell v. Moss.)

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, January, 3, 1837.   Extract as follows:—

" By the Eurotas there will be two more cases of wrought silks for you from Mr. Sartori, for which we have prepared funds by our drafts of the 30th ult., 3 months date, upon Messrs. Lizardi & Co., for £stg. 500; and the same figures to the credit of your account at 49¼d in p2607 2. silver."

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, January, 13th, 1837.   Extract as follows:—

" By the Eurotas you will receive two cases more silks from Mr. Sartori, and we have drawn upon Messrs. Lizardi for £stg. 300, at three months date to keep your account square; and the same figures to your credit in p1564 5. 2. silver, as per note at foot, but you will please to keep in mind that by March next, we shall require a fresh credit.

Note.

£stg. 300    at Exchange of  49¼ .        Gold p1461 18 06
                             Agio 7 0-0              102 06 08
                                                 ─────────────
                              Silver          1564 05 02"

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, March 8th, 1837.   Extract as follows:—

" The silks in our possession from Mr. Sartori, will be sent on board probably to-morrow, when we shall draw upon your friends, Messrs. F. De Lizardi & Co., of London, for the balance of your general account current in about £stg. 1100, leaving about £1000 of your credit in Lizardi & Co., undrawn for.   Against it we shall have to ship all this month, silks from Sartori for about p7700, by which we shall be placed for about £stg. 425 in disburse.   To this you must add the silks to be delivered and paid by us during the months of April, May, June, July and August next, amounting together to about p24,400 for which we have no doubt you have already provided, as by our letter of the 2d Dec. 1836, we informed you of the engagements we had taken.—The Louvre and William and Francis, are both nearly laden for New York, and we shall send your silks by the first that sails."

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, March 17th, 1837.   Extract as follows:

" In date of the 8th instant we wrote you through Havre, all that occurred in your concerns here, of which enclosed is a triplicate copy, and subsequently we shipped for you, by the William and Francis, four cases of silks from Mr. Sartori, which vessel sailed on the 14th.   By that conveyance we transmitted your bill of lading and legalized invoice of the same, amounting to p11083 10., and we now hand you inclosed duplicates of both these documents to serve

(Bell *v.* Moss.)

in case of need. The Louvre sailed on the 12th, and it was our intention to have sent your silks by her, but Mr. Sartori assured us that the insurance had been ordered already per William and Francis, and as the former loaded a cargo chiefly of grain, as you will see by the annexed note, possibly she may make a long passage and arrive after the latter. We drew in date of the 14th £stg. 1037, at three months date, for your account upon Messrs. De Lizardi & Co. of London, which figures to your credit in p5407 2. 9. as per note at foot, and thereby your letter of credit of the 31st May last, is finished, and we shall be expecting a fresh credit for our reimbursement of the silks contracted for, as explained in our last."

Letter.—Bell, De Yongh & Co. to R. & J. Phillips, dated Leghorn, April 3d, 1837. Extract as follows:

" At foot you have copy of a few lines from Messrs. F. De Lizardi & Co. of London, dated the 23d ult. to inform us that they should pay no more of our drafts on your account: nevertheless as by our letter of the 11th March we informed them, that we were about to ship another case of silks for you, for which we should take our reimbursement to the extent of your credit on them of the 31st of May, we conclude that our draft for £stg. 1,037 in date of the 14th, will have been honoured."

" Copy of Messrs. F. De Lizardi & Co's. letter, dated London, 22d of March, 1837. The deranged state of commercial credit here, as connected with the United States, and the great uncertainty attending all remittances at present from that quarter, obliges us to close all American credits without exception. You will therefore please to suspend all further valuation on us in account of Messrs. R. & J. Phillips, of Philadelphia, for the present."

Three accounts of Lizardi & Co. with R. & J. Phillips, dated 31st of December, 1836, 9th of February, 1837, and 6th of May, 1837, containing statements of drafts drawn by Bell, De Yongh & Co. on Lizardi & Co., and paid by the latter, amounting to £8016 4. 4., exclusive of the two drafts of £1120 and £1037, dated the 10th and 14th of March, and showing a balance due to Lizardi & Co. on the general account of £63,294. 0. 1.

J. L. Moss, one of the firm of R. & J. Phillips, was produced as a witness on the part of the defendants; and having executed a release of all his interest in any surplus of the assigned estate, testified as follows:

" This statement, made the 10th of May, 1837, has my signature, and shows to debit of the plaintiffs for three thousand two hundred and sixty-one pezzos, (witness here refers to the statement annexed,) a pezzo is about ninety-two and a half cents, as we calculate it; (witness compares the statement with the letter from R. & J. Phillips to George F. Darby.) We discovered that the silks were not on board

(Bell v. Moss.)

the Louvre, but in the William and Francis; we discovered that silks to the amount of eleven thousand and eighty three pezzos were not shipped by them; at the time we wrote to Mr. Darby, we supposed they were on board; afterwards we made out a new statement; instead of eighteen thousand three hundred and seventy-nine pezzos, we credited seven thousand two hundred and nine; the statement shows three thousand two hundred and sixty-one pezzos to debit of Bell, de Yongh & Co. I communicated the fact to the plaintiffs; this account of May 10th is a correct statement."

Being cross-examined by the plaintiff's counsel, the witness said: "We discovered error in the first item; they charged us with pezzos 1683. 15, supposed to be paid to Sartori; this was a shipment we had consigned to the plaintiffs, with orders to credit Sartori with his portion of profits, and credited us short. They had made a double charge; we explained it to Mr. Darby, and he never expressed any dissatisfaction; we wrote also to Bell, de Yongh & Co.; I think some months before assignment. (Account R. & J. Phillips with Bell, de Yongh & Co., exhibited to him, dated July 25th, 1838, hereafter appended in the rebutting testimony.) This account is correct, except that the pezzos 1683.15, above-mentioned, are to be deducted, and shows, that if these bills had been paid, there would have been a balance in our favour of 2000 pezzos and upwards; three cases included sent by William and Francis, included in 5824. 18. 2, which included the erroneous item of 1683. 15. 2. The assignees have the former account."

Statement made the 10th of May, 1837, referred to by the witness, as follows:

"*Dr. Messrs. Bell, De Yongh, & Co. in account current with R. & J. Phillips.*

| | | | | | | |
|---|---|---|---|---|---|---|
| To this amount erroneously debited, | 1683 | 15 2 | | Feb'y. | | |
| " F. de Lizardi & Co. for their two bills on them, £2157 - | - 11190 | 5 1 | | By balance as per their account current, - | 5284 | 18 2 |
| | | | | " One case silks, Wm. & Francis, | 3787 | 15 0 |
| | 12874 | 0 3 | | " Balance due R. & J. Phillips, | 3261 | 7 1 |
| To balance due in pezzos, | 3261 | 7 1 | | Pezzos, | 12874 | 0 3 |
| Errors excepted, May 10th, 1837. | | | | R. & J. PHILLIPS." | | |

The defendants then gave in evidence the assignment made by R. & J. Phillips to the defendants, which purported to transfer

(Bell *v.* Moss.)

certain real estate, situate in New York, and certain merchandise there, and debts due to the assignors, in trust to apply the proceeds, first to the payment of certain debts due by the assignees to Jonas Phillips & Co., of London, and afterwards to and among the other creditors.

The defendants also gave in evidence an agreement between the parties, dated August 28th, 1839, for the sale of the silks in question; and the investment of the proceeds to abide the judgment of the Court.

The following facts were also agreed:—The silks in question were taken possession of by the defendants, as assignees aforesaid, on their arrival at New York, and regularly entered at the custom house there.

The bills of exchange before mentioned, were drawn on account of the said silks, and upon the aforesaid credit of £10,000.

The counsel for the plaintiffs gave in evidence the following as rebutting testimony:

An account R. & J. Phillips with Bell, de Yongh & Co., dated July 25th, 1838, referred to by the witness, J. L. Moss, in which R. & J. Phillips were charged with the returned bills, and a balance appeared to the credit of Bell, De Yongh & Co., p10.549.

Letter.—R. & J. Phillips to Bell, de Yongh & Co., dated the 31st of May, 1836.　Extract as follows:—

"As it appears that some misunderstanding has taken place in regard to the silks ordered by V. A. Sartori, we now beg you will follow this letter for the future, or until otherwise requested.

You will oblige us by attending to the purchasing and shipping of these silks hereafter yourselves.　The invoices and bills of lading to be sent by you to us, and the amount of invoices to be charged to us, the same as for goods on our account.

　　　*　　　*　　　*　　　*　　　*

Hereafter any amount to be drawn for our account, please to value at ninety days, on our friends, Messrs. F. de Lizardi & Co. London, whom we address this day, and lodge a credit of £10,000 sterling."

Letter.—R. & J. Phillips to Bell, De Yongh & Co., dated the 15th of October, 1836.　Extract as follows:—

"The invoice and bill of lading of silks are received. p2398.15.6 is credited to your account on the 31st of August, per Undine, and the citron was to be put on board the Delos.　The silks are paying them a good profit, and we are pleased at it, as they cost high."

Letter.—R. & J. Phillips to Bell, De Yongh & Co., dated the 31st of December, 1836.　Extract as follows:—

" Through our friend Derby, we received your duplicate favour of 19th Oct., and original of 22d, with invoices of lustrings and curtain silks per Ellen, amounting to p3221. 10, which you have taken to our debit, and shall be confirmed to in our books."

" Letter.—Bell, De Yongh & Co., to R. & J. Phillips, dated the 5th of April, 1837, (produced by the defendants.) Extract as follows:

" Annexed is a copy of what we last wrote you on the 3d inst., since when we have received letters from London, dated the 25th ultimo, stating that Lizardi & Co. had left in sufferance our two drafts for your account of the 11th and 14th of March, together £2,157, which consequently remain to your debit, and if not paid when due, will be returned with charges. A certain number of houses in London, chiefly connected with the United States, have been, it would appear, under the necessity of taking similar steps, from having extended their engagements beyond their means; and although the mischief arising from such unwise conduct must prove highly prejudicial to themselves and their connexions, the final result will, it is to be hoped, be a more wholesome and regular system."

Letter.—R. & J. Phillips to Bell, De Yongh & Co., dated the 28th of February, 1837. Extract as follows:

" The invoice of silks for Mr. Sartori shall be passed with those of the rags to your credit in conformity. We take note of your £2,700, and are glad that you have no occasion to make any more drafts on our account, as we can when money is 1½ a 2 0-0 per month, do so much better without merchandise."

Letter.—R. & J. Phillips to Bell, De Yongh & Co., dated 14th March, A. D. 1837. Extract as follows:

" Some other plan must be adopted to pay for the silks for Mr. Sartori, as we are not opening any new credit in London."

Account sales of silks by the defendants.

Upon the foregoing evidence the learned judge directed a verdict for the plaintiffs, subject to the opinion of the Court on the law arising on the whole evidence in the case, and with leave to move to enter a verdict for the defendants, if the Court should be of opinion that the law was with them.

A motion was accordingly made to enter a verdict for the defendants.

Mr. *G. L. Ashmead*, for the defendants.—

1. The plaintiffs had no right to stop these goods *in transitu* at the time of the arrival of the vessel. The evidence shows that a credit of ten thousand pounds had been opened by R. & J. Phillips with Lizardi & Co., confirmed by the latter, and accepted by the plaintiffs,

who had drawn several bills on the faith of it, and with especial reference to these silks. The law seems to be settled in England, that Lizardi & Co. were bound by their agreement to accept. *Chitty on Bills*, 217, &c. *Powell* v. *Morrison*, (1 *Atkyns*, 611.) *Selwyn's N. P.* 270, &c. *Wynn* v. *Raikes*, (5 *East*, 514.) *Clark* v. *Cocke*, (4 *East*, 57.) *Potter* v. *Rayworth*, (13 *East*, 417.) The rule has been almost every where recognised in the United States. *Townsall* v. *Sumrall*, (2 *Peters*, 181.) *Coolidge* v. *Payson*, (2 *Wheaton*, 66.) *Van Reemsdyk* v. *Kane*, (1 *Gallison*, 630.) *M'Evers* v. *Mason*, (10 *Johns.* 207.) *Mayhew* v. *Prince*, (11 *Mass. Rep.* 54.) *Banorgee* v. *Hovey*, (5 *Mass. Rep.* 11.) *Wilson* v. *Clements*, (3 *Mass. Rep.* 1.) *Goodrich* v. *Gorden*, (15 *Johns.* 6.) *Parker* v. *Greenleaf*, (2 *Wendell*, 545.) *Schimmelpenninck* v. *Bayard*, (1 *Peters*, 283.) *De Tastet* v. *Crousillat*, (2 *Washington's C. C. Rep.* 132.) *Boyce* v. *Edwards*, (4 *Peters*, 122.) *Lee* v. *Dick*, (10 *Peters*, 482.) The cases show that it is sufficient if either from a communicated promise, or from circumstances, a third party was induced to give credit. Now in the first place, the credit here is equivalent to a payment; and therefore the right of stoppage did not exist. In *Parsons* v. *Armor*, (3 *Peters*, 428,) it is said, that "a bill of exchange is the substitute for the actual transmission of money, by sea or land. Power therefore to draw on a house in good credit, and to throw the bills into the market, is equivalent to a deposit of cash in the vaults of the agent." But supposing that it was no payment as between R. & J. Phillips and the plaintiff, yet it is so as regards the real defendant. The rule is, that if a creditor has two funds, he must take that the choice of which will not injure another. The real defendants here are the creditors under the assignment, who have no other fund than the assigned effects. It is of no importance in this view of the case that the Lizardis are creditors of R. & J. Phillips, since they are bound by their contract.

2d. At all events, the plaintiffs had no right to stop these goods until after protest for non-payment. The plaintiffs themselves speak of the bills as being "left in sufferance." *Non constat* that they would not be paid. Under the circumstances of this case, the bills could not be considered dishonoured, until after the refusal of payment; and this seems to have been the view of the plaintiffs, from their letter of the 3d of April, and agreement of the 31st of May, 1837. Here there is an alleged right to stop for non-payment, and an agreement to wait until the fact of non-payment is ascertained: which is an absurdity.

3d. In point of fact there was not a sufficient stoppage of the goods. We admit that it is not necessary that possession should be taken formally. But a demand is necessary; which must be made, properly made, and of the proper person. In 2 *Kent's Commentaries*, 543, it is said, "a demand of the goods of the carrier, or notice to him to stop the goods on an assertion of the vendor's right by an

(Bell v. Moss.)

entry of the goods at the custom house, or a claim, and endeavours to get possession, is equivalent to an actual stoppage of the goods." *Walker* v. *Woodbridge*, (*Cooke's B. L.* 494.) *Northey* v. *Field*, (2 *Esp. Rep.* 613.) *Miles* v. *Ball*, (2 *Bos. & Pull.* 457.) *Lett* v. *Cowley*, (7 *Taunton*, 169.) The agreements between the parties do not alter the case, since there is an express reservation of all rights.

Mr. *Meredith*, for the plaintiffs.

1. Were Lizardi & Co. liable as acceptors of these bills? There is no evidence of their having confirmed this credit by any communication with the plaintiffs. The letters to R. & J. Phillips furnish no evidence of this. No authority has been produced to show that such an agreement as the Lizardis entered into amounts to an acceptance. There are two kinds of letters of credits. 1st. Where the vendor distrusts the vendee, and requires additional security. This is in the nature of a guaranty. 2nd. Where the vendor is to be reimbursed by a letter of credit. This implies no obligation on the drawee. Suppose a deposit in a bank. The bank is not liable beyond actual acceptance. The cases on the other side are all upon agreements by the drawee himself. The agent in London of the plaintiffs in this case obtained the opinion of counsel there, which was against the liability of Lizardi & Co. [In this opinion (which was produced and read by Mr. *Meredith*) the counsel cited *Williams* v. *Everett*, (13 *East*, 590.) *Wharton* v. *Walker*, (4 *Barn. & Cres.* 163.) *Lilly* v. *Hays*, (5 *Adolph & Ellis*, 548.) *Fisher* v. *Miller*, (1 *Bingh.* 150.) *Gibson* v. *Minet*, (2 *Bingh.* 7.)] The effect of the protest of non-acceptance is, that the bill was dishonoured, and the drawee discharged. The object of a bill is negotiation. The plaintiffs had a right to a written acceptance on the bill. After protest, you can't look to the drawee. *Byles on Bills*, 7 *Term Rep.* 440. 3 *East*, 93. *Ambler*, 399. 2 *Term Rep.* 63. 3 *Term Rep.* 119. 1 *Starkie*, 115. The defendants are not purchasers for a valuable consideration; but as assignees, stand in the shoes of R. & J. Phillips. 4 *Campbell*, 31. 1 *Bos. & Pul.* 563. 4 *Wharton's Rep.* 500.

2nd. The stoppage in this case was effectual in respect to time, manner, and persons. A general agent has power for this purpose. 1 *Esp.* 240. 2 *Bos. & Pul.* 457. 2 *Term Rep.* 63. 3 *East*, 93. *Whitaker on Lien*, &c., 171. 6 *East*, 371. There was an actual and sufficient stoppage. The vessel was on the high seas at the time of the failure of R. & J. Phillips; and the carrier was not accessible by notice. It does not appear where she was owned. It is said in all the books to be sufficient if there is a claim, demand, or notice. *Ruck* v. *Hatfield*, (5 *Barn. & Ald.* 632; S. C. 7 *Eng. Com. Law Rep.* 216.) *Crawshay* v. *Eades*, (1 *Barn. & Cress.* 181; S. C. 8 *Eng. Com. Law Rep.* 51.) *Bartram* v. *Farebrother*, (4 *Bingh.* 519; S. C. 15 *Eng. Com. Law Rep.* 79.) *Wood* v. *Jones*, (7 *Dowl. &*

(Bell *v.* Moss.)

*Ryl.* 126; S. C. 10 *Eng. Com. Law Rep.* 274.)   *Dixon* v. *Yates,* (5 *Barn. & Adolph.* 313; S. C. 23 *Eng. Com. Law Rep.* 86.)   1 *Esp. Rep.* 240.   3 *Chitty's Com. Law,* 343.   *Whitaker on Lien,* 166. Here the plaintiffs were disarmed by the conduct of the defendants. They made no objection that notice had not been given to the carrier.

Mr. *T. I. Wharton,* in reply.—The plaintiffs are *bona fide* creditors; and an antecedent debt is a sufficient consideration.   *Walker* v. *Geisse,* (4 *Wharton,* 252.)   This is not the case of a general assignment of all the debtor's effects for the benefit of creditors generally.

1. There is no difference in principle between the case of an advance of money on the faith of a general promise to accept, and an advance of goods on the same promise.   The evidence is clear, that the engagement of Lizardis, was communicated to the plaintiffs, and that they relied upon it and trusted to it.   The case of *De Tastet* v. *Crousillat* is clear upon this point, and the authority conclusive. But it seems that the opinion of counsel in England has been given against the liability of Lizardis.   The reasoning in that opinion does not seem to be very forcible.   Nor are the cases cited by the counsel very much in point.   In *Williams* v. *Everett,* the money was remitted, with directions to apply it to the payment of certain debts; and the person to whom it was remitted refused so to apply it.   The principle stated in the case is contradicted by *Sharpless* v. *Welsh,* (4 *Dall.* 279,) and it seems to be overruled in *Lilly* v. *Hays,* cited in the same opinion.   In *Wharton* v. *Walker,* the decision turned mainly on the form of action.   *Fisher* v. *Miller* seems to be very slightly applicable; and in *Gibson* v. *Minet,* there was a revocation before any act was done by the party.   It is said there was no acceptance.   This amounts to nothing if Lizardis were bound to accept.   *Ontario Bank* v. *Worthington,* (12 *Wendell,* 593.)   But the plaintiffs were not bound to present for acceptance.   This was the case of a bill payable after *date,* not after *sight;* in the latter case only it is necessary to present for acceptance.   *Chitty on Bills,* 299.   It is said that it was an advantage to the plaintiffs to have the name of the acceptor.   But they had this already by the general letter of credit.   Here the question is of the rights of the parties at the time of the arrival of the vessel.   *Vertue* v. *Jewell,* (4 *Campb.* 31.)   *Davies* v. *Reynolds,* (1 *Stark. N. P.* 115; S. C. 2 *Eng. Com. Law Rep.* 320.) Several cases have been cited to show that an acceptance of a bill by the vendee does not impair the right of stoppage; but there is no case of an acceptance by a third person, as this is.

2. It does not appear that the defendants had sufficient authority from the plaintiffs to stop the goods.   In most of the cases cited there was an assignment of a bill of lading to the agent.   The evidence proves nothing more than a mere claim upon the vendees.   There is

(Bell v. Moss.)

no case in which this was held to be sufficient. In the cases produced on the other side the claim was on the carrier. Here the defendants entered the goods at the custom-house, which amounted to a taking possession.

The opinion of the Court was delivered by

GIBSON, C. J.—It rather seems the plaintiffs might have had recourse to F. De Lizardi & Co. on the bills accepted in advance, or by an action on their agreement to accept. It is fallacious to say there was no proof of privity between the particular parties. The consignees had given the plaintiffs a credit with that house for the very purpose of enabling them to draw on it in payment of purchases; and the bills drawn in pursuance of it had been honoured in repeated instances; after which it would have been too late for F. De Lizardi & Co. to say they had made no engagement with the plaintiffs. They were in the predicament of a master who had recognised an authority in his servant to contract debts on his account, by previous payment of his bills. The promise to accept was doubtless made to the consignees, and not to the plaintiffs; but might not the plaintiffs, from whom a consideration moved on the faith of it, have maintained an action on it, or had the benefit of it, as a precursory acceptance? It would seem from *Smith* v. *Plummer*, decided at the present term,* that they might. F. De Lizardi & Co., by their letter of the 29th of June, 1836, recognised the credit as granted specially in favour of the plaintiffs; after which it would be a fraud in them to insist on want of privity with a house that had trusted the consignees on the faith of their promise. The operation was the same in substance as if the bills had been drawn by the consignees in the plaintiffs' favour; and *Powel* v. *Morrison* shows they would, in that case, have been taken, with the advantage of an acceptance in advance. What the plaintiffs did, was to draw in favour of themselves by the consignees' authority; and as their bills were consequently attended with the same advantage, I see nothing to have prevented them from recurring to F. De Lizardi & Co. as actual acceptors; and it is immaterial to the question that they subsequently discharged the responsibility of that house, by protesting the bills for want of a special acceptance. But here the defendants' case stops.

No authority has been produced for the position of their counsel, that a consignor who has means of recourse to funds in the hands of a solvent house, may not stop the goods for the insolvency of the consignee at any time before satisfaction had; nor has any sufficient reason been given why he should not. A credit with a banker is not payment, but a means of payment, more or less secure, according to the solidity of the depositary; and the greater or less certainty of

* *Ante*, p. 89.

the security cannot affect the question of its character : it is but a security still.   Here the consignees were the vendees and primary debtors; and what did they pledge as a guaranty ?  The acceptances of F. De Lizardi & Co.; and no principle is surer than that a creditor may press all his securities at the same time.   The London house was but a surety ; and it has never been adjudged that the existence of an additional security precludes the right of stoppage consequent on the failure of the principal debtor.   Lord KENYON is reported in *Northey* v. *Field*, (2 *Esp.* 613,) to have said that the leaning of the Courts in favour of stoppage *in transitu*, is a leaning in furtherance of justice ; and if there ever was a case for its encouragement, it is the present, in which, to have deprived the plaintiffs of their hold on the goods, would have exposed them to the hazard, not only of the acceptors' solvency, but also of their eventual liability.   That house, it seems to us, might have been held responsible on the agreement to accept; but it might have seemed otherwise to the Courts of Westminster Hall—in fact, an opinion adverse to its liability, though no part of the case, it is proper for purposes of illustration, to say, was given by the plaintiffs' own counsel in England—and it would be palpably unjust, did the law cast on them the burden of electing between consistent remedies at their peril.   The protection given by this specific remedy would not have been entire, had it not been demandable in any event, and without waiting for the result of an application of collateral securities.   Every judge and text writer speaks of the right as arising by the failure of the vendee, without regard to circumstances ; and it cannot be doubted, in this instance, that, as vendees, the consignees were the direct and principal debtors.   What was said in *Parsons* v. *Armor*, (3 *Wheat.* 428,)—that a bill of exchange is a substitute for coin, and that a power to draw and throw the bills on the market is equivalent to a deposit of cash in the agent's vaults—was said, not in regard to the relation of vendor and vendee, but in regard to the relation of principal and agent, and as affecting the agent's right to purchase on credit under an authority to purchase only for cash. As nothing but an extinguishment of the debt is satisfaction between the buyer and seller, I would say that a power to check for a deposit in bank would not be payment to suspend the right of stoppage, unless it were so agreed, and the deposit were actually placed to the drawer's account—certainly it would not produce that consequence if the deposit might be withdrawn, or the consignor's check might be refused. On the principle of substituting the London house as the debtor, the bills, drawn as they were by the consignors, would have exonerated the consignees from all responsibility whatever; but it has not been said that an action would not have been maintainable against them on the contract of sale, and why might they not proceed as well by an enforcement of their lien? If the drawing of a bill had the effect of merging every previous responsi-

(Bell *v.* Moss.)

bility, the right of stoppage, which is incident to the consignee's liability on the contract of sale, would be extinguished by it in every case ; but that it is followed by no such consequence, is shown, among other instances, by *Feise* v. *Wray*, (3 *East*, 94,) in which the right was sustained, though an endorsed bill, drawn by the consignor, and accepted by the consignee, had still a month to run. This would prove, were an authority wanted for so plain a principle, that liability on the original contract is not supplanted by a security given for the price ; as is instanced also by the giving of the buyer's own note or bill, which, though it operates an extension of the credit, extinguishes not the original contract ; as well as by payment in the bills of a third person, which is not absolute satisfaction, unless it were declared so by the terms of the bargain. In *Feise* v. *Wray*, the counsel of the assignees did not pretend that the acceptance of a bill drawn for the whole, is payment for the whole ; but only that as the holder might have proved under the commmission, the bill was to be taken as payment *pro tanto ;* to which the Court answered, that even payment of a part did not preclude the consignor from stopping the residue. That case shows, also, that the consignor, being entitled to all the remedies for which he implicitly stipulated, is not precluded from stopping the goods by the existence of a collateral security. It would indeed startle the commercial community to say, that where the consignor has collateral means of payment, uncertain as it must be in its results, he shall not press a lien growing incidentally out of the consignee's direct liability. The Messieurs De Lizardi and company have already contibuted their share of the loss suffered by these transactions ; and the other creditors have no equity to throw the plaintiffs on the security of their acceptance. They had an undoubted right to stop *in transitu*, when the consignees executed their assignment : have they lost it by the transfer : if not, has it been effectually exercised ?

The right of stoppage *in transitu* is said to be an equity ; and the defendants, being invested with a *prima facie* title, it is said are entitled to claim as purchasers for a valuable consideration, and without notice : no part of which is founded. Though first of all sanctioned by a court of equity, it has grown by commercial usage into a legal privilege, annexed to a contract of sale ; and it is equally, but much more frequently, enforced by a Court of law. Neither are the defendants, as assignees in trust, purchasers for a valuable consideration. That proposition has been settled by *Williams* v. *Twelves* and *Knowles* v. *Lord*. Nor could the consignors, by this species of transfer, whatever they might have done by an assignment of the bill of lading, convey an unencumbered ownership, be the consideration what it might. It is a general principle of the common law, that he who has not property in a chattel, or a right to present possession of it, cannot transfer it absolutely ; to which a transfer by endorsement of a bill of lading is an exception, depending on the

(Bell *v.* Moss.)

commercial qualities of that document, which, as evidence of an unconditional title, passes by endorsement like a promissory note or bill of exchange, and, like it, cannot be challenged in the hands of a *bona fide* holder who has received it in a course of regular dealing, for want of consideration betwixt the consignor and consignee. *Craven v. Ryder,* (6 *Taunt.* 433 ; S. C. 1 *Eng. Com. Law Rep.* 439,) is an authority in point, that a resale by the consignee does not bar the consignor's right.

The objection that a special authority was necessary to empower their general agent to act in the plaintiff's behalf, is also unfounded. Not even such a power, but a transfer of the ownership, which is usually effected by an endorsement and transmission of the bill of lading, is requisite to enable an agent to claim by action in his own name ; and it seems to have been doubted in *Cox* v. *Harden,* (4 *East,* 211,) whether even an endorsement, without valuable consideration, were sufficient. But it is not necessary to invest an agent with the ownership, in order to invest him with the right of stoppage. Nor does it seem necessary that he should have an authority for it adapted to the particular transaction. To constitute a commercial agency, I should be inclined to think, requires not a writing under seal : and where it is general, acts done by the agent within the scope of the principal's business, bind him as effectually, or operate to his benefit as extensively, as if they were done by himself. They are treated as acts of a servant done in his master's employment.

The remaining point is the only one which induces the judgment to pause. The countermand of the original order to deliver to the consignee, which is the usual act of stoppage, is so invariably communicated to the master, or other person in possession, that I have seen but one case in which it was communicated to any one else. It has not however been adjudged, that a countermand is the only means by which the consignor can assert his right ; and it is not perceived why any other notorious act of reclamation should not have the same effect. The object of a demand is not merely to implicate the master, but chiefly to affect the consignee with notice through his person ; and to accomplish that, an open and notorious assertion of the right in any form, would seem to be equally potent and proper. The consignee is bound to notice a demand on the master ; but he surely cannot complain of a demand made on himself, that it gave him direct, instead of circuitous information of the consignor's attachment of the property by virtue of his lien. A delivery subsequent to demand on the carrier, does not defeat it; and on what ground is the consignee's possession inoperative, in such a case, but that of surreption ? A demand of the carrier is a countermand of the previous order to deliver ; and where he is not accessible at the time, there is no reason why an equivalent for it should not be found in a countermand of the consignee's authority to receive. If there were a specific object to be accomplished by a demand on the

(Bell *v.* Moss.)

carrier, it would be to make him liable; but his responsibility is seldom looked to; the object being to prevent the consignee's ownership from becoming absolute; for which purpose, any act that warns him of an enforcement of the lien, ought to be taken for a sufficient protest against his possession. It is stated by Chancellor KENT, (2 *Comm.* 543,) that no specific form of stoppage is necessary; and in *Ex parte Walker and Woodbridge,* (1 *Cooke's B. L.* 149,)— the case to which I have alluded—it was deemed sufficient to defeat the title of the bankrupt's assignees, who had taken possession of the property by force, that the consignors had previously entered the goods at the custom-house. Now what are the circumstances here? The Messieurs Phillips, the consignees, became insolvent about the twenty-second of March, and the ship arrived on the ninth of May. Mr. Derby, the plaintiffs' general agent, wrote to the defendants, the assignees, on the sixth of May, informing them that they had not acquired an absolute title in consequence of the protest, for non-acceptance of the bills drawn on F. De Lizardi & Co., and proposing that the goods should either be delivered to him on deposit to await the fate of the bills, or that the assignees should keep a separate account of sales; and in the event of their acceptance of the latter alternative, prospectively demanded the proceeds as the property of the plaintiffs. There could not be a more distinct annunciation of their right under their lien, or a more direct assertion of their intention to urge it. In consequence of this, the parties agreed that the goods should remain without being sold till the question of title should be determined by a competent tribunal, should the bills not be paid in the mean time; and that the rights of the parties should not be varied by the agreement. The bills were not paid; and the plaintiffs, having brought this action of trover, stand as they did when their agent asserted their claim. The assertion, it is said, was accompanied with proposals, and not a demand; but the proposals themselves were a substantive demand; and it is sufficient, in either aspect, that the agent not only pointed to the existence of the plaintiffs' lien, but gave a notice of their determination to prosecute their right. After that, the defendants could gain no advantage by taking possession of the goods.

Judgment for the plaintiffs.